Trish JORDAN, Plaintiff,

v.

CITY OF CHICAGO, DEPARTMENT OF POLICE, a Municipal Corporation, and Jewel Companies, Inc., a Foreign Corporation, Defendants.

No. 79 C 3837.

United States District Court, N. D. Illinois, E. D.

March 24, 1980.

John P. Coghlan, John A. McGuire, Chicago, Ill., for plaintiff.

Jennifer Duncan-Brice, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This is an action under 42 U.S.C. §§ 1983 and 1985(3) to redress an alleged deprivation of the plaintiff's civil rights as guaranteed by the Fourth, Fifth, Seventh and Fourteenth Amendments to the United States Constitution. The defendant City of Chicago has filed a motion to dismiss the complaint.

The plaintiff alleges that on January 9, 1979, security officers at the Jewel Grand Bazaar, located at 5320 South Pulaski in Chicago, suspected her of theft of store merchandise. The officers proceeded to strip-search her on store premises. She was subsequently taken to a City of Chicago police station where she was arrested and again strip-searched.

Plaintiff Jordan was charged with theft and appeared in court on February 5, 1979. When the City of Chicago and Jewel Companies, Inc., defendants herein, failed to appear to prosecute, the case was continued to March 6, 1979. Defendants again failed to appear and the proceedings were terminated in favor of Jordan.

On September 14, 1979, Jordan filed a complaint in this court. Counts I and II of plaintiff's complaint seek to hold the City of Chicago liable under §§ 1983[1] and 1985(3) for depriving her of her constitutional rights. The law on the subject of municipal liability for police action has gone through several changes in recent years, and remains somewhat unsettled.

■ The first question this court must resolve is whether plaintiff's complaint under § 1983 can only be read to assert a claim against the City of Chicago under a theory of *respondeat superior.* The parties are in agreement that the defendant cannot be held liable solely under this theory. The Supreme Court in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), recently held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036. Therefore municipalities are liable only for action "pursuant to official municipal policy of some nature (that) caused a constitutional tort." *Id.*

■ Thus, the question becomes whether the plaintiff has alleged an "act pursuant to some official municipal policy," and further, whether the municipality, under the color of law, has in some way "caused" its employees to violate plaintiff's constitutional rights. The plaintiff contends that Paragraph 4 of Count I of the complaint fulfills these requirements. That paragraph alleges:

> That at all times mentioned and material to this complaint, the defendant, CITY OF CHICAGO, DEPARTMENT OF POLICE, through certain of its police officers, women attendants, or other employees and agents, and at all times hereinafter mentioned, were acting under the

color of the statutes and ordinances of the City of Chicago and State of Illinois. These allegations are not sufficient under *Monell.*

In *Owens v. Haas,* 601 F.2d 1242 (2d Cir. 1979), the Second Circuit Court of Appeals considered whether the lower court properly dismissed an action based on facts and pleadings similar to those involved in this case. Owens was a federal prisoner who alleged that he was severely beaten by prison officials and as a result of such beatings was badly injured. He filed a damage suit in district court, alleging violations of his civil rights under §§ 1983 and 1985. The district judge rejected Owens' § 1983 claim against Nassau County because no official policy or pattern of constitutional violations had been pleaded so as to hold the county liable under *Monell.*

The Court of Appeals, citing *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978), noted that the county could be held liable if the failure to supervise or lack of a proper training program was so severe as to constitute "gross negligence" or "deliberate indifference" to the deprivation of plaintiff's constitutional rights. By alleging "deliberate indifference," the plaintiff would be seeking to hold a municipal body liable for its own actions, rather than for the actions of its employees on a *respondeat superior* theory. The court of appeals ruled that plaintiff Owens should be permitted to amend his complaint and conduct limited discovery to determine whether a case could be made for deliberate indifference by the county.

In this case, the plaintiff merely reiterates the verbiage of § 1983, and does not allege any facts under which the City of Chicago could be held liable for its own action. Although the complaint alleges that the City of Chicago "either individually and/or through its police officers... deprived the plaintiff of her rights ...," in

---

1. Section 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

   thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

the context of this complaint, this language does nothing more than describe a *respondeat superior* theory.

Furthermore, the element of causation is absent from plaintiff's complaint. The Supreme Court in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), held that municipalities and supervisory personnel are not liable for civil rights violations perpetrated by individual police officers absent an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by (the defendants)—express or otherwise—showing their authorization or approval of such misconduct." *Id.* at 371, 96 S.Ct. at 604. Plaintiff's complaint fails to describe any link between alleged police misconduct and an official policy of the City of Chicago, nor does it allege the city's acquiescence in or condonation of such misconduct.

The second issue with which this court is presented is whether the plaintiff has stated a cause of action under § 1985(3).[2] In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that "(t)he language [of 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798. *See also Murphy v. Mount Carmel High School*, 543 F.2d 1189, 1192 n.1 (7th Cir. 1976); *Potenza v. Schoessling*, 541 F.2d 670, 672 (7th Cir. 1976); *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 541 (7th Cir. 1975). Clearly, all racially based discrimination is within the ambit of § 1985(3). *See Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979); *The Supreme Court, 1970 Term*, 85 Harv.L.Rev. 38, 103 (1971). The Court in *Griffin*, however, did not decide whether a conspiracy motivated by discriminatory intent other than racial bias would be actionable under 1985(3).[3] 403 U.S. at 102 n.9, 91 S.Ct. at 1798 n.9.

In this case, however, we need not consider what types of class-based motives are sufficient to state a claim under 1985(3). Plaintiff's complaint is clearly insufficient. It alleges a conspiracy between defendant City of Chicago, its police officers, its women attendants and/or other employees and agents, for the purpose of depriving plaintiff of various constitutional rights. The pleadings, however, contain no allegation of racial or any other class-based discriminatory animus on the part of the conspirators.[4]

The defendant has also moved that the Department of Police be stricken from the caption and body of the complaint. Plaintiff has admitted that the verbiage Department of Police is mere "surplusage." In *Ellis v. City of Chicago*, 478 F.Supp. 333 (N.D.Ill.1979), Judge Grady held that the

2. Section 1985(3) provides:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

3. The legislative history of 1985(3) points to the conclusion that discrimination on bases other than race was intended to be actionable. Senator Edmunds of Vermont expressed the view that the protections of the Ku Klux Klan bill should extend to a "Vermonter," a "Catholic," or a "Democrat." Cong.Globe, 42d Cong. 1st Sess. 567 (1871).

The Seventh Circuit has proceeded cautiously in determining what types of class-based animi other than race discrimination may provide a cause of action under 1985(3). Other circuits, however, have ruled that persons other than a racial group constitute a class for the purposes of 1985(3). *See, e. g., McClellan v. Mississippi Power & Light Co.*, 526 F.2d 870 (5th Cir. 1976) (debtors seeking relief under bankruptcy laws); *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973) (religious groups); *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973) (supporters of a political candidate).

4. Since plaintiff has not sufficiently alleged that she was a victim of any class-based invidious discrimination, we need not reach the question of whether the allegations in the complaint are "conclusory and speculative" as the defendant City of Chicago has claimed in its motion to dismiss.

Chicago Police Department is not a suable entity, but merely a department of the City of Chicago which does not have a separate legal existence. *Cf. Dr. Martin Luther King, Jr. Movement, Inc. v. City of Chicago,* 435 F.Supp. 1288 (N.D.Ill.1977). Accordingly, the Department of Police will be stricken from the complaint.

For the above stated reasons, the defendant City of Chicago's motion to dismiss is granted. The plaintiff is given leave to file an amended complaint within thirty days.