Donald R. FABRIZIO, Plaintiff,

v.

STOREY COUNTY, et al., Defendants.

No. CV–R–80–136–ECR.

United States District Court,
D. Nevada.

March 31, 1982.

3. This Motion was joined in by the Haylock Plaintiffs.

Kevin Karp, Reno, Nev., for plaintiff.

Jack Christensen, Dist. Atty., Virginia City, Nev., Vargas & Bartlett, Reno, Nev., for defendants.

## MEMORANDUM DECISION

### EDWARD C. REED, Jr., District Judge.

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivation of rights secured under the United States Constitution. Plaintiff's claims arise out of an alleged illegal and improper arrest which occurred on December 21, 1979, in Storey County, Nevada. Jurisdiction of this Court has properly been invoked under 28 U.S.C. § 1343. The action was previously dismissed by stipulation as to defendants Robert Delcarlo, William Avansino and Arthur Travis, and by order of this Court with respect to defendant Edward S. Colletti (sued as Edward S. Collett), Justice of the Peace of Storey County. No service of process was apparently ever made upon the defendant denominated as the City of Virginia and hence no judgment may be entered herein.

A court trial was held on January 12, 1982. The defendants remaining in this action at time of trial were Jack Christensen, District Attorney of Storey County, and the municipal entity Storey County. The threshold question is whether the defendants are entitled to judgment under the facts shown at trial by virtue of immunity. Because of the following the Court is obligated to answer the question as to each defendant in the affirmative.

### I FACTS

On December 20, 1979, one Dale Andrews went to the office of Mr. Christensen, as District Attorney, and reported certain alleged threats by plaintiff of bodily harm to Mr. Andrews. After a brief meeting Mr. Christensen prepared a criminal complaint against plaintiff and a warrant of arrest for him. Mr. Christensen then departed and Mr. Andrews remained at the Storey County Courthouse until the arrival of Judge Colletti soon thereafter. Mr. Andrews and

Judge Colletti signed the criminal complaint and Judge Colletti signed the warrant of arrest, setting bail at $500 for an appearance in court by plaintiff on December 21 at 10:00 A.M.

The next morning, December 21, 1979, just after 8:00 a. m., Deputy Sheriffs William Avansino and Arthur Travis received the complaint and warrant and a brief time after that departed for plaintiff's place of residence at Virginia City Highlands, some distance from the Sheriff's office in Virginia City. The Deputy Sheriffs drove into the driveway of plaintiff's home and one of them knocked on the door of the house. The door was answered by plaintiff's wife, Sandy Fabrizio. Plaintiff was called to the door and the officers asked him to step outside. Plaintiff was handcuffed and placed in the Sheriff's car. The warrant of arrest and criminal complaint were read to him and he was provided with a copy of each of these documents. The Deputy Sheriffs and plaintiff then returned to the Sheriff's office at Virginia City.

Upon arrival at the courthouse where the Sheriff's office is located plaintiff was taken to the Sheriff's booking room and the Deputy Sheriffs commenced booking procedures. At about that time Mr. Christensen received word that plaintiff had been arrested and was in the process of being booked. Mr. Christensen testified that he was concerned that there be no record made of the arrest which might reach F.B.I. files because he felt that this would not be fair to the plaintiff under the circumstances. He immediately notified the Sheriff's office to terminate the booking procedures, release plaintiff from custody, and to advise him to return to appear before Judge Colletti at 10:00 a. m.

This information was relayed to Deputies Avansino and Travis who immediately followed the instructions given. A mug shot which had been taken of plaintiff was given to him; the booking sheet was torn up; plaintiff's personal property was returned; and he was advised that he could leave the premises so long as he returned in time to appear before Judge Colletti at 10:00 a. m.

Prior to 10:00 a. m. plaintiff returned to the Sheriff's office and was then accompanied by Deputy Travis to Judge Colletti's chambers. Judge Colletti gave plaintiff a copy of the complaint and told him that Mr. Andrews claimed plaintiff had threatened him. Judge Colletti admonished plaintiff to "cool it off". Judge Colletti ordered plaintiff released on his own recognizance but told him that if there were any future problems, it would be a long time before plaintiff saw "the light of day." Judge Colletti advised plaintiff that he was entitled to counsel and that his attorney should contact the District Attorney to set up a date for the arraignment on the complaint.

No further proceedings were ever had in the case after that. There is no explanation in the record as to why nothing further was done in the case.

According to defendant Christensen the charges against plaintiff were initiated under Chapter 170 of the Nevada Revised Statutes, "Prevention of Public Offenses." Ostensibly, his intention in prosecuting the case was to secure a judicial determination of whether plaintiff should be required to give a "peace bond" to keep the peace toward Mr. Andrews pursuant to NRS 170.-090.

The wording of both the complaint and the warrant of arrest which were issued appear to track the language of Chapter 170. That statute provides that if a complaint is filed claiming an accused person has threatened to commit an offense against another, a warrant may be issued "as in other criminal cases" and "the trial on the charge shall proceed as in other criminal cases." According to Chapter 170, upon trial the accused is either discharged or if there is reason to fear the commission of an offense is required to post a "peace bond." If the individual charged fails to give a bond upon being ordered to do so, he is committed to prison until the bond is posted, but the incarceration may not exceed a six months period. In other words, the Nevada statutes authorized the issuance of the complaint, the warrant and the arrest of plaintiff. A case commenced under Chapter 170 is handled much the same as a criminal case although it may not result in what is denominated as a criminal acquittal or conviction. The wording of NRS 170.060 provides that such cases proceed "as in *other* criminal cases." (Emphasis supplied.) The gravamen of Chapter 170 is that "peace bond" proceedings are criminal proceedings.

The record indicates that there was no established policy or custom, of Storey County to use Chapter 170 for purposes of requiring a person accused of threatening to commit an offense against the person or property of another to post a peace bond. Judge Colletti believed that he could recall signing one peace bond approximately ten years ago. But even if there had been such policy or custom, as mentioned above, the Nevada statute authorized the issuance of the complaint and warrant, and the arrest of plaintiff.

The foregoing is the essence of the relevant acts for which damages are claimed.

Plaintiff also presented evidence of additional occurrences relating to subsequent conduct and proceedings involving possible conflict of interest of the District Attorney in acting as District Attorney and also as Mr. Andrews' private counsel in respect to disputes between plaintiff and Mr. Andrews and subsequent criminal charges against Mr. Andrews. Plaintiff was frustrated in the selling of his home due to the filing of a lis pendens in connection with a lawsuit in which Mr. Andrews was represented by Mr. Christensen. Plaintiff also claims that he and his family were harassed by members of the Sheriff's office who purportedly followed a car in which his wife and child were riding, and patrolled in and about private property adjacent to plaintiff's home. Also, on one occasion a shot was fired over plaintiff's head while he was at his home. However, there is no identification as to who fired that shot.

Neither the complaint nor the pretrial order indicate any claim for damages by plaintiff because of these additional occurrences. The claim for damages is based on the issuance of the complaint and warrant, and the arrest of plaintiff.

## II DEFENDANT JACK CHRISTENSEN

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) the Supreme Court held that the immunity of a government prosecutor from suit brought under the Civil Rights Act of 1871 is absolute when the prosecutor is sued relating to his conduct where he is acting within the scope of his duties in initiating and pursuing a criminal prosecution. All of the acts of defendant Christensen for which damages are sought involve his instigation of a criminal action against plaintiff which resulted in his arrest and alleged damages.

It is clear that such activities by defendant Christensen though perhaps motivated by improper purpose and carried out in bad faith were conducted entirely within the scope of his duties as a prosecutor. Hence, defendant Christensen is entitled to absolute immunity in this action. As stated by the court in *Imbler, supra,* 424 U.S. at p. 427, 96 S.Ct. at p. 993:

> "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying the prosecutor's immunity would disserve the broader public interest."

## III STOREY COUNTY

In *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the court held that municipalities may be liable in actions brought under 42 U.S.C. § 1983 in instances where official policy causes a constitutional tort. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) followed and also embraced the holding in *Monell* that:

> "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S., at 694, 98 S.Ct. at 2038.

The evidence at trial went only to the defendants treatment and conduct toward plaintiff which plaintiff seems content to rely upon in showing the requisite policy or custom of the municipality. It stands to reason that certain instances of, or a pattern of harassment of one individual by agents or employees of defendant Storey County does not, when considered by itself, constitute a policy or custom of the defendant municipality within the meaning of the applicable language found in *Monell.* *Jordan v. City of Chicago Dept. of Police,* 505 F.Supp. 1 (N.D.Ill.1980); *Owens v. Haas,* 601 F.2d 1242 (2nd Cir. 1979). At best plaintiff has proved liability on the part of defendant Storey County which could only be predicated on a *respondeat superior* theory based on the isolated acts of its agents prohibited under *Monell.*

The foregoing shall constitute the Court's findings of fact and conclusions of law.

IT IS HEREBY ORDERED that judgment be entered by the Clerk of this Court in favor of defendants Jack Christensen and Storey County.