**Jack SIEGFRIED and Jane Siegfried, as Legal Representatives of the Estate of Mary Aurelia Siegfried, deceased, Petitioners,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 88–68 V.

United States Claims Court.

Jan. 22, 1990.

Anthony M. Colantoni, Chicago, Ill., for petitioners.

Michael Milmoe, Washington, D.C., with whom was Stuart E. Schiffer, Acting Asst. Atty. Gen., for respondent.

### OPINION[1]

RADER, Judge.

#### Background

Petitioners seek compensation under the National Vaccine Injury Compensation Pro-

---

1. This opinion may contain information that may not be disclosed to a non-party. *See* 42

gram, 42 U.S.C. §§ 300aa–10 through 300aa–34 (Supp. V 1987) (the Act), for the death of their daughter Mary Aurelia Siegfried (Mary). Mary was born on October 27, 1985. She was a healthy child and developed normally for several months. On March 8, 1986, Mary received a DPT inoculation.

Shortly after receiving the vaccine, Mary began crying. Mary's crying was not normal fussiness, but an intense, high-pitched cry. The crying persisted for ten hours. Even when the crying stopped, Mary did not act normal. Late the following day, March 9, Mary's mother found Mary dead.

On October 13, 1989, Special Master Baird held a hearing into the causes of Mary's death. Dr. Mark R. Geier testified to a reasonable degree of medical certainty that Mary suffered a shock collapse or hypotonic-hyporesponsive collapse following administration of the DPT vaccine. Mary's mother testified about the circumstances related to Mary's death. Based on this testimony, the special master recommended that this court find that Mary's death fit the legal criteria of the Vaccine Injury Table. 42 U.S.C. § 300aa–14(a). Specifically, the special master suggested that Mary died of a hypotonic-hyporesponsive collapse within three days of the DPT vaccination.

On November 9, 1989, the special master recommended that petitioners receive an award of $250,000.00 to compensate for Mary's death. The special master also recommended that petitioners recover $12,-581.67 for attorney fees and costs.

On November 17, 1989, petitioners filed objections to the special master's recommended decision. Petitioners objected to the special master's failure to recommend recovery of $2,671.10 in costs associated with presentation of the petition to the United States Claims Court. Petitioners also objected to the special master's failure to recommend recovery of $6,150.00 in at-

torney fees related to the administration of Mary's estate in the State of California. This court held a hearing to consider the petition and petitioner's objections on January 17, 1990.

### Vaccine–Related Death Award

At the January 17, 1990 hearing, counsel for respondent stated that respondent had no objections to the special master's recommended findings about Mary's death. On the basis of the entire record, this court finds that Mary's death meets in every way the requirements for compensation under the Act. Under 42 U.S.C. § 300aa–15(a), this court awards Mary's estate $250,-000.00.

### Costs

■ The special master did not recommend award of $16.15 in telephone charges, $40.55 in postage, and $2614.40 in travel and meal expenses for counsel and petitioners. Petitioners incurred the $16.15 telephone charge while communicating with their attorney about this vaccine case. Petitioners spent the $40.55 in postage by sending the petition to experts and to the court. Petitioners spent the $2614.40 in travel and meal costs for the trip to Washington, D.C. to appear before the special master.

At the January 1990 hearing, this court reviewed each of these costs. Petitioners showed that they incurred each expense to present their petition to the Claims Court. In light of the purpose of each cost, petitioners showed that each expenditure was reasonable. Respondent agreed that the charges were reasonable.

Section 300aa–15 of Title 42 states:

(1) The judgment of the United States Claims Court ... shall include an amount to cover—

(A) reasonable attorneys' fees, and

(B) other costs,

incurred in any proceeding on such petition.

---

U.S.C. § 300aa–12(c)(2) (Supp. V 1987). Accordingly, within fourteen days after the date of this opinion, the parties shall designate any material subject to § 300aa–12 and such designated material will be deleted for public access. If on

review of this report, there are no objections filed within the fourteen day period, then it shall be deemed that there is no material subject to § 300aa–12.

42 U.S.C. § 300aa–15(e)(1). Thus, the Act directs this court to include within its judgment reasonable costs incurred by petitioners in proceedings on the petition.

The special master apparently based his recommendation on the description of costs under 28 U.S.C. § 1920 and the case law related to that statute. Section 1920 of Title 28 permits federal courts to "tax as costs" certain fees. 28 U.S.C. § 1920 (1982). Under this statute, federal courts have awarded costs to prevailing parties, *Lenard v. Argento,* 699 F.2d 874 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983), and taxed costs against a vexatious losing party. *East Coast Tender Serv., Inc. v. Winzinger, Inc.,* 759 F.2d 280 (3d Cir.1985). Section 1920 delineates only certain costs as taxable. Because petitioner's request did not fall within the taxable costs of § 1920, the special master apparently did not recommend recovery.

With respect to costs, the Act embodies different purposes and different language from § 1920. The Act does not tax a losing party with costs, rather it directs the inclusion of costs in the court's compensation award. Even when a petitioner receives no compensation for an injury, the Act permits the Claims Court to award costs. 42 U.S.C. § 300aa–15(e). In sum, the Act seeks to reduce the financial burdens of petitioning for relief from vaccine-related injuries. The strict statutory limits on costs found in § 1920 do not apply to the different statutory purposes and language in the Act.

The Act's language and purpose permits this court to award reasonable costs "incurred in any proceeding under such petition." The telephone, postage, and travel costs requested by petitioner were reasonable. Petitioner incurred these costs to supply evidence as requested by the special master. Accordingly, this court awards petitioner $2,614.40 in reasonable costs.

The special master recommended an award of $12,581.67 to cover reasonable attorney fees and costs. This court adopts the special master's findings on this amount and adds, consistent with this opinion, $2,614.40. The reasonable attorney fees and costs for all proceedings since the hearing before the special master are $3,947.54. Supplemental Application for Attorneys' Fees and Other Costs, No. 88–68–V, filed Jan. 19, 1990. Thus, petitioner shall receive $19,143.61 in reasonable attorney fees and costs for all proceedings before the Claims Court.

Attorney Fees for Decedent's Estate

■ The special master did not recommend award of attorney fees related to probate proceedings for Mary's estate. Petitioner spent $6,150.00 in attorney fees to apply for pre-petition letters of administration and post-petition probate of Mary's estate in the State of California.

Neither the application for letters of administration nor the probate proceedings are "proceedings under [the vaccine injury] petition." The laws of the State of California govern the administration of Mary's estate. Conceivably third parties or the State could have legal actions pending against a vaccine decedent's estate. The Act does not provide attorney fee awards to cover the myriad legal implications of establishing or administering an estate. Rather the Act provides reasonable fee awards for work by petitioners' attorney during the pendency of a petition before a special master, the Claims Court, the United States Court of Appeals for the Federal Circuit, or the Supreme Court.

The special master correctly stated:
Section 910 of the California Probate Code provides that the attorney's fee for probate "shall be allowed out of the estate."

Report and Recommended Decision, No. 88–68–V, filed November 9, 1989, at 12. Thus, California law governs the award of attorney fees incurred in the administration of Mary's estate. The Act governs only those fees "incurred in any proceeding on [the] petition." This court denies petitioners' request for attorney fees to administer Mary's estate.

## Conclusion

This court awards the estate of Mary Aurelia Siegfried $250,000.00 under 42 U.S.C. § 300aa–15(a)(2). This court also

awards petitioners $19,143.61 in reasonable attorney fees and costs. This court directs the clerk to enter judgment consistent with these conclusions.

No additional costs.