996 F.2d 1219
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Walter T. HOUSTON, Plaintiff-Appellee,
v.
MILLER CENTRIFUGAL CASTING COMPANY, Incorporated, Defendant-Appellant.
 No. 92-2279.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 20, 1993.
Decided May 20, 1993.
 
 1
 Before CUMMINGS, and ROVNER, Circuit Judges, and SHADUR, Senior District Judge.*
 
 ORDER
 
 2
 In November 1991 Walter T. Houston filed this diversity action against Miller Centrifugal Casting Company ("Miller") alleging that he is owed commissions for sales negotiated and consummated while he was an employee but for which goods were not shipped until after his employment ceased. Houston was hired by Miller as a sales representative on January 25, 1985. The original contract provided that he would receive a 5 percent commission on the products he sold for defendant. Miller is in the foundry business and manufactures "centrifugally cast castings." Houston was to act as sales representative for Miller in eight Midwestern states. Though the initial contract was only for a period of one year, Houston continued to work for Miller and the question raised here is: under what terms? Defendant allegedly fired Houston and ended its contractual relationship with him on May 15, 1989, although Miller claims that Houston quit.[1] Letters exchanged at the time suggest the departure was amicable but necessary because Houston began to do work for a company in competition with Miller. In any event, things turned bitter when plaintiff sought an accounting for commissions on shipments made under a contract he allegedly secured from the Cone Drive Division of Ex-Cel-O Corporation ("Cone Drive") in January 1989 for the period January 1, 1989, to December 31, 1991. Plaintiff asked for $106,214.89 in post-termination commissions (app. at A-57), and a jury agreed that he deserved the money.
 
 
 3
 On appeal defendant contends that (1) documentary evidence did not show a purchase order received prior to plaintiff's termination, (2) the trial court erred by submitting to the jury instructions and a special verdict permitting it to find for the plaintiff on an implied contract theory, and (3) there was no credible evidence under the express contract placed into evidence that would support the jury's damage award. We disagree and therefore affirm.
 
 
 4
 Miller already had a relationship with Cone Drive when Houston became its sales representative for Michigan where Cone Drive is located; Miller did $700,000 in annual business with the firm by 1984. Thus the basic agreement between Miller and Houston, under which Houston would be reimbursed 5 percent for commissions, was altered slightly for sales to Cone Drive: he was to receive 1 percent in commission on the first $700,000 and 5 percent for business beyond that. By the time plaintiff left defendant's employ, Cone Drive was doing $1.4 million in yearly sales with Miller. Houston negotiated Miller's first blanket order with Cone Drive in 1986. As they use the term "blanket order," the parties are apparently referring to a "requirements contract." A customer who signs a requirements contract agrees to purchase from the seller--and the seller agrees to provide--all of the buyer's needs for a particular product, in this case gear blanks. Black's Law Dictionary 1172 (5th ed. 1979). Thus the parties have a binding contract even though the exact quantity of items sold fluctuates according to the buyer's needs. Houston renegotiated the requirements contract between Cone Drive and Miller in 1989; the record shows he made ten phone calls to Cone Drive and seventeen phone calls to Miller in January 1989 to secure the contract's continuation. Miller now contends that it had no contract with Cone Drive because of the absence of the quantity term--and of course Houston cannot be compensated for negotiating a contract that doesn't exist. But requirements contracts are well recognized in contract law and indeed are expressly permitted by Wisconsin law, Wis.Stat. § 402.306. The best evidence that Cone Drive and Miller in fact did have a valid and binding contract is that Miller continued to supply Cone Drive's needs. In any event, the jury found that there was a contract between the two firms and this type of dispute where the contract is ambiguous is for the trier of facts to determine. RTE Corp. v. Maryland Casualty Co., 247 N.E.2d 171, 175 (Wisc.1976).
 
 
 5
 Defendant also asserts that plaintiff is not entitled to commissions on goods shipped to Cone Drive after plaintiff's employment ended. The parties' original employment contract ended after 1985, but they continued the relationship until May 25, 1989. Defendant criticizes the jury instructions for suggesting that an implied contract might have been formed; he argues that the jury should have been forced to choose between the parties' differing versions of express oral contracts. The implied contract theory works against Miller because certain terms of the implied contract would be supplied by customs in the industry, which in this case favor Houston receiving his commissions. Since there was enough of a question about just what kind of contract existed between the parties and what the terms were of that contract, the instructions given were not an abuse of the trial court's discretion. The instructions were not overly broad, confusing or prejudicial. Lenard v. Argento, 699 F.2d 874, 893-894 (7th Cir.1983), certiorari denied, 464 U.S. 815.
 
 
 6
 Finally, defendant argues that there was no evidence to support the jury's award of $106,214.89 to plaintiff. However, plaintiff testified that he used the shipping logs of defendant and checked them against the items covered in the blanket order he had negotiated with Cone Drive. Moreover, defendant's president testified that if his company had not terminated its relationship with plaintiff in May 1989, Houston would have continued to receive commissions of 1 percent on the first $700,000 of shipments and 5 percent on shipments of over $700,000 to Cone Drive. Because plaintiff had secured the new blanket order from Cone Drive in January of 1989, months before his termination, he was entitled to receive commissions from June 1989 through December 1991, as claimed.[2] Therefore plaintiff was justified in seeking commissions commencing in June 1989, the month after his termination, through December 1991, the remaining period of the blanket order.
 
 
 7
 Judgment affirmed.
 
 
 
 *
 The Honorable Milton I. Shadur, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 According to plaintiff's Exhibit 31, the actual termination date was May 25, 1989 (App. A-56)
 
 
 [2]
 He was apparently paid his appropriate commissions through May 1989